**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

**APR 2 0 2009**

J. T. NOBLIN, CLERK
BY_____DEPUTY

|  |  |  |
|---|---|---|
| D.W., by and through his next friend, Devonsha Fairley on behalf of himself and all persons similarly situated; MISSISSIPPI PROTECTION AND ADVOCACY SYSTEM, INC, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 1:09cv 267 LG-RHW |
|  | ) | COMPLAINT |
| HARRISON COUNTY, MISSISSIPPI, | ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      This is a civil action pursuant to 42 U.S.C. § 1983 to vindicate the rights of children imprisoned in the Harrison County Juvenile Detention Center ("Juvenile Detention Center") under the Eighth and Fourteenth Amendments to the United States Constitution. The Plaintiff represents a class of children who have suffered horrific physical and mental abuse and live in dangerously unsafe and unsanitary conditions at the Juvenile Detention Center. The abusive conditions at the Juvenile Detention Center include punitive shackling, staff-on-youth assaults, 23-hour a day lock-down in filthy jail cells, unsanitary conditions resulting in widespread contraction of scabies and staph infections, dangerous overcrowding that forces many youth to sleep on the concrete floor, and inadequate mental health care. Harrison County has contracted with the Mississippi Security Police to operate the Juvenile Detention Center. Mississippi Security Police is a for-profit, private corporation with headquarters in Pascagoula, Mississippi. In exchange for operating this facility, Mississippi Security Police receives over $1.6 million per year in County funds.

1

2.     On behalf of himself and all similarly situated children, D.W. seeks declaratory, preliminary and permanent injunctive relief ordering the Defendant to cease all unconstitutional policies and practices at the Juvenile Detention Center and to provide class members with constitutionally required care and living conditions. The children are joined in this action by the Mississippi Protection & Advocacy System, Inc. ("MPAS"), a non-profit agency with a federal mandate to protect the rights of children with disabilities who are confined in the Juvenile Detention Center. MPAS asserts its right to meet with children who are confined inside the Juvenile Detention Center and to conduct regular monitoring of the facility. Plaintiff MPAS seeks declaratory, preliminary and permanent injunctive relief preventing the Defendant from denying MPAS, as authorized by its federal enabling statutes, full, complete, timely and unaccompanied access to the children detained at the Juvenile Detention Center, Juvenile Detention Center facilities, facility staff, as well as full, complete, timely access to records.

### PARTIES

3.     Plaintiff D.W. is a seventeen year-old male currently imprisoned in the Juvenile Detention Center. On behalf of himself and all similarly situated children, he brings this action by and through his next friend and mother, Devonsha Fairley. He is confined at the Juvenile Detention Center while he waits for his disposition before the Harrison County Youth Court. For almost two months, D.W. has been held at the Juvenile Detention Center, where he has endured a brutal physical assault from adult staff members, spent 23 hours a day locked in a filthy vermin-infested jail cell, and been forced to sleep on the floor of an overcrowded cell with only a thin mat that smells of urine. Unsurprisingly, during D.W.'s imprisonment, his mental health has deteriorated rapidly. He tried to commit suicide by hanging himself in his cell, yet he has received no mental health treatment or counseling. These conditions are neither isolated

2

incidents nor restricted to D.W. Indeed, D.W.'s plight echoes the stories of over thirty youth interviewed by attorneys. All of these children uniformly describe the Juvenile Detention Center as a squalid, over-crowded facility that is infested with insects, where jail officials frequently resort to violence and the inappropriate use of restraints. These conditions violate the constitutional rights of D.W. and all similarly situated children, all of whom are entitled to reasonably safe and sanitary conditions of confinement, freedom from unreasonable bodily restraint, and protection from harm.

4.     Plaintiff Mississippi Protection & Advocacy System, Inc. ("MPAS") is a nonprofit organization with a federal mandate to protect and advocate for the rights of persons with disabilities in Mississippi. Federal law extends this mandate to children with disabilities who are confined to juvenile detention centers. Through a contracted agent, MPAS devotes considerable resources to investigating conditions of confinement and advocating on behalf of youth housed in juvenile facilities across the state of Mississippi. MPAS and its contracted agent have made numerous efforts to gain access to the children with disabilities who are confined at the Juvenile Detention Center. Despite the Plaintiff's federal right to access the Juvenile Detention Center and its residents and Plaintiff's good faith efforts to reach an agreement on access with the individuals responsible for operating the Juvenile Detention Center, the Defendant refuses to grant MPAS access. The Defendant's actions prevent MPAS from fulfilling its federal mandate to protect and advocate for the civil rights of youth with disabilities confined to the Juvenile Detention Center. This violates Plaintiff's right to function as an effective protection and advocacy system for the State of Mississippi and also violates the rights of youth with disabilities at the Juvenile Detention Center who are entitled to receive protection and advocacy services. MPAS files this complaint in its own name to redress injuries to itself and on behalf of its clients.

3

5.      Defendant Harrison County is the governmental entity with the responsibility to "establish and maintain detention facilities, shelter facilities . . . or any other facility necessary to carry on the work of the youth court." Miss. Code Ann. § 43-21-109. Under the terms of a contract executed by Harrison County, Mississippi Security Police, a private, for-profit company is responsible for the daily operations of the Juvenile Detention Center. But Harrison County is the entity with ultimate responsibility to protect and secure the rights of children detained in the Juvenile Detention Center.

6.      The Defendant ignores well-established law and acts with deliberate indifference by subjecting D.W. and all similarly situated children to shockingly inhumane conditions of confinement, physical abuse, and inadequate mental health care.

## JURISDICTION AND VENUE

7.      Plaintiff D.W.'s cause of action arises under the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

8.      Plaintiff MPAS's cause of action arises under the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§10801 et seq.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§15001, et. seq.; the Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C., §§794e, et. seq.; and 42 U.S.C. §1983.

9.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331.

## CLASS ACTION ALLEGATIONS

10.    Plaintiff D.W. brings this suit on his own behalf and on behalf of all children who are or who will in the future be incarcerated at the Harrison County Juvenile Detention Center.

11.    The class is so numerous that joinder of all members is impractical. The Juvenile Detention Center has the capacity to house 48 youth, and the population often exceeds the maximum capacity.  Children remain in the Juvenile Detention Center for varying lengths of time, and the population changes on a daily basis. The class also includes future members whose names are not known. Fed. R. Civ. P. 23(a)(1).

12.    There are questions of law and fact common to all class members, including but not limited to the Defendant's failure to protect class members from harm and the Defendant's failure to provide class members with constitutionally safe and humane conditions of confinement. Fed. R. Civ. P. 23(a)(3).

13.    Because the policies, practices, and customs challenged in this Complaint apply with equal force to the named Plaintiff and the other members of the class, the claims of the named Plaintiff are typical of the class in general.  Fed. R. Civ. P. 23(a)(3).

14.    The named Plaintiff, D.W. will fairly and adequately represent the interests of the class. D.W. possesses a strong personal interest in the subject matter of the lawsuit and is represented by experienced counsel with expertise in class action litigation in federal court.  Counsel have the legal knowledge and resources to fairly and adequately represent the interests of all class members in this action. Fed. R. Civ. P. 23(a)(4).

15.    The Defendant has acted and refused to act on grounds generally applicable to the class in that Defendant's policies and practices of violating the Plaintiff's constitutional rights has

affected all class members. Accordingly, final injunctive and declaratory relief is appropriate to the class as a whole. Fed. R. Civ. P. 23(b)(2).

## STATEMENT OF FACTS

16.     The Harrison County Juvenile Detention Center houses children awaiting adjudication and disposition before the Harrison County Youth Court. Although the majority of children housed at this facility are awaiting their court appearances, state law allows juvenile detention centers to house children for 90 days as a post-adjudication disposition. Miss. Code Ann. § 43-21-605(1)(k).

17.     The contract between Harrison County and the Mississippi Security Police requires that Mississippi Security Police "...house and feed up to 48 juveniles in a secure detention facility pursuant to the laws of the state of Mississippi and of the United States and regulations for juvenile detention facilities as set forth by the United States Department of Justice." (*See* Exhibit 2) Despite the clear terms of this contract, the Defendant has allowed Mississippi Security Police to violate federal and state law by subjecting the children housed in the Juvenile Detention Center to unconstitutional violations.

### Protection from Harm Violations:
### Physical and Psychological Abuse by Staff

18.     Defendant has a custom and/or practice of failing to protect children at the Juvenile Detention Center from unconstitutionally malicious and sadistic physical abuse and assaults.

19.     On or about March 23, 2009, Plaintiff D.W. was assaulted by two guards while he was in his cell. Guard 1 placed D.W. in a chokehold, slammed him to the ground, and placed him in handcuffs. Once D.W. was lying on the ground restrained with handcuffs, Guard 2 joined in the assault and one of the Guards pressed his knee into D.W.'s back while the other Guard pushed

on D.W.'s neck. These brutal actions crushed D.W.'s face into the concrete floor of his cell, making it difficult for him to breathe and causing him to gasp for air.

20.    D.W. sought medical attention for the injuries he suffered as a result of this incident. When his mother visited him, she noticed bruising around his wrists where the guards had tightened the handcuffs in an attempt to deliberately cause D.W. unnecessary pain.

21.    Upon information and belief, and based on interviews with over thirty youths who were recently held in the Juvenile Detention Center, such physical abuse is also inflicted with regularity on other putative class members.

### Protection from Harm Violations: Inadequate Mental Health Treatment

22.    Defendant has a custom and/or practice of being deliberately indifferent to the serious mental health needs of youth confined at the Juvenile Detention Center.

23.    At the end of his first week in detention, D.W.'s mental health declined so dramatically that he attempted to kill himself by tying a sheet around his neck and hanging himself on a light fixture in his cell. A staff member intervened before D.W. could cause himself serious harm. However, D.W. has been denied all access to adequate, ongoing mental health treatment.

24.    Instead of providing D.W. with adequate mental health services, staff at the Juvenile Detention Center taunted and harassed D.W. by telling him that his mother no longer cared for him and would not come to visit him any more. Staff threatened D.W. that without his mother around, they could do anything to him and get away with it.

### Protection from Harm Violations: Dangerous and Unsanitary Conditions

25.    The Defendant has a custom and/or practice of failing to provide sanitary facilities for the children in its care. Toilets and walls are covered with mold, rust, and excrement. Insects have infested the facility, and D.W. frequently wakes up covered by bug bites. The smell of human

excrement permeates the children's living quarters. D.W. and the other children at the facility frequently have to sleep on thin mats that smell of urine and mold. The Defendant does not provide children with adequate personal hygiene items.

### Protection from Harm Violations: Overcrowded Living Conditions

26.     The Defendant has a custom and/or practice of allowing the Juvenile Detention Center to become dangerously and unconstitutionally overcrowded. Upon information and belief, the facility has a capacity to house 48 children, and at times holds as many as 60 youth. As a result, some children are forced to sleep on the floor, pressed up against other youth, with nothing but a thin, filthy mat separating the child from the concrete. Plaintiff D.W. has frequently been forced to sleep on the floor on a thin mat that smells like urine.

### Protection from Harm Violations: Excessive Room Confinement

27.     The Defendant has a custom and/or practice of confining children to their cells for as long as 23 hours a day and of failing to provide children with access to regular physical exercise, recreation or any other rehabilitative programming. Plaintiff D.W. has spent the past two months locked in his cell for 23 hours a day.

### Protection from Harm Violations: Inadequate Training and Supervision of Staff

28.     The Defendant has a custom and/or practice of failing to ensure the proper training and supervision of Juvenile Detention Center staff. Consequently, the safety and security of youth at the Juvenile Detention Center is constantly threatened by the extreme incompetence of staff and the lack of adequate supervision and oversight. Staff frequently resort to physical violence and respond to youths' requests for help or assistance with taunts, profanity, and indifference.

**Due Process Violations: Arbitrary and Punitive Disciplinary Practices**

29.    The Defendant has a custom and/or practice of subjecting youth to arbitrary and excessive discipline that is designed to punish and cause discomfort rather than maintain and restore discipline. Rule violations are punished by placement in "lockdown" for periods ranging from three days to an entire week. While on "lockdown," youth spend 23 to 24 hours per day in their cells. Youth are not permitted to attend school, exercise, or have any reading or writing materials.

30.    The use of lockdown is purely punitive and arbitrary. Youth do not receive any form of due process hearing prior to their placement on lockdown, and the duration of lockdown is not tailored to respond to the alleged rule violation nor limited to the length of time necessary to restore or maintain order.

31.    The Defendant does not make any effort to ensure that prolonged periods of room confinement do not induce any dangerous psychological consequences on youth.

32.    The Defendant placed D.W. on lockdown for seven consecutive days for allegedly refusing a staff directive. D.W. did not receive any form of due process prior to being placed on lockdown, and he was only permitted to shower two times during this period. With the exception of the two times D.W. took a shower, D.W. spent 24 hours in his cell each day with absolutely nothing to do.

**Plaintiff MPAS's Access Authority**

33.    Congress established protection and advocacy ("P&A") systems in the Developmental Disabilities Assistance and Bill of Rights Act of 1975 ("PADD Act") to protect and advocate for the rights of persons with developmental disabilities. Congress provided P&As with the authority to investigate incidents of abuse and neglect against individuals with disabilities and

pursue legal, administrative, and other remedies on their behalf. 42 U.S.C. § 15043(a). Congress

has since expanded the scope of the P&A system to provide protection and advocacy services to

all persons with disabilities. The Protection and Advocacy for Individuals with Mental Illness

Act of 1986 ("PAIMI Act") provides for the protection of rights of individuals with mental

illness, 42 U.S.C. §§ 10801 et seq.; and the Protection and Advocacy of Individual Rights

Program of 1973 ("PAIR Program") was created to protect the rights of all other individuals with

disabilities who are not covered under the PADD and PAIMI Acts. 29 U.S.C. § 794e. Pursuant

to federal law MPAS has rights to:

    a.   reasonable unaccompanied access, for monitoring and investigatory purposes, to public

        and private areas of the Juvenile Detention Center facilities. 42 C.F.R. § 51.42(b); 42

        C.F.R. § 51.42 (c); 45 C.F.R. § 1386.22(f); 45 C.F.R. § 1386.22(g).

    b.   interview facility service recipients, staff and other persons as part of an abuse and

        neglect investigation when MPAS determines it has probable cause to believe an incident

        has occurred. 42 C.F.R. § 51.42(b).

    c.   provide information and training on individual rights and services provided by the P&A

        system. 42 C.F.R. § 51.42 (c) and 45 C.F.R. § 1386.22(g).

    d.   communicate privately with facility residents. 42 C.F.R. § 51.42 (d) and 45 C.F.R. §

        1386.22(h).

    e.   access to records of facility residents. 42 C.F.R. § 51.41 and 45 C.F.R. § 1386.22.

    f.   access to facility incident reports and investigatory findings. 42 C.F.R. § 51.41(c)(2).

34.    To receive federal funding under the PADD, PAIMI, and PAIR Acts, states must have an

effective P&A system. MPAS is designated as Mississippi's P&A System. *See Mississippi*

*Protection & Advocacy v. Cotten,* 1989 U.S. Dist. LEXIS 17075 at *3 (S.D. Miss. 1989).

Federal law permits MPAS to designate agents with whom it contracts to assist in carrying out its responsibilities under federal law. 42 U.S.C. § 10801(b); § 10805(a)(1); 42 C.F.R. § 51.42.

35.    In order to carry out the Congressional mandate to protect and advocate for the rights of individuals with disabilities, the P&A Acts require that the P&A and its authorized agents have physical access to individuals with disabilities, access to individuals' records, and physical access to the facilities housing these individuals. 42 U.S.C.§15043(a)(2); 42 U.S.C. § 10805(a)(3); 45 C.F.R. § 1386.22(g)-(h); 42 C.F.R. § 51.42(a)-(c). This access includes the right "to meet and communicate privately" with residents "both formally and informally, by telephone, mail and in person." 45 C.F.R. § 1386.22(2).

36.    Under the PAIMI Act, "any public or private residential setting that provides overnight care accompanied by treatment services" is a facility which a P&A is authorized to access and monitor. "Facilities include, but are not limited to the following:  General and psychiatric hospitals, nursing homes, board and care homes, community housing, *juvenile detention facilities,* homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units. 42 C.F.R. § 51.2 (emphasis added).  *See also* 45 C.F.R. § 1386.19.

37.    The Harrison County Juvenile Detention Center is a covered "facility" as defined under the PAIMI Act and the DD Act. 42 U.S.C. 10802(2); 42 C.F.R. 51.2; 45 C.F.R. § 1386.19.

38.    Under the PADD, PAIMI, and PAIR Acts, Congress designated two distinct bases for access to facilities and residents:  (1) access for the purpose of investigating allegations of abuse and/or neglect, 42 U.S.C. § 15043(a)(2)(B), 42 U.S.C. § 10805(a)(1)(A), 45 C.F.R. § 1386.22(f), 42 C.F.R. § 52.42(b); and (2) access for the purpose of monitoring the facility and the treatment

of its residents, 42 U.S.C. § 15043(a)(2)(H), 42 U.S.C. § 10805(a)(3), 45 C.F.R. § 1386.22(g), 42 C.F.R. § 51.42(c).

39.    To carry out its mandate to investigate incidents of abuse and neglect, MPAS is entitled to "reasonable unaccompanied access . . . to all areas of the facility which are used by residents or are accessible to residents . . . [and] shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect." 42 C.F.R. § 51.42(b).

40.    To carry out its monitoring duties, MPAS is entitled to reasonable unaccompanied access to all residents of a facility at reasonable times to provide P&A services and contact information, rights information, monitor compliance with respect to the rights and safety of service recipients, and to view and photograph all areas of the facility which are used by residents or are accessible to residents. 42 C.F.R. § 51.42(c); 45 C.F.R. § 1386.22(g).

41.    The PAIMI Act states that MPAS has the right to access all residents of a facility "despite the existence of any State or local laws or regulations which restrict informal access to minors and adults with legal guardians or conservators." 42 C.F.R. § 51.42(e).

42.    The PAIMI and PADD Acts also authorize MPAS to prompt access to all records of any individual who is a client of the system if the individual, or his legal guardian, conservator, or other legal representative, has authorized the system to have such access. 42 C.F.R.§ 51.41(b)(1); 45 C.F.R. §1386.22(a)(1).

43.    The PAIMI and PADD Acts provide MPAS with access to records of individuals who are in the custody of the state and with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe that such individual has been

subjected to abuse or neglect.  42 C.F.R. § 51.41(b)(2)(ii)-(iii); 45 C.F.R. § 1386.22(a)(2)(ii)-

(iii).

44.    The PAIMI regulations also require the Defendant to provide MPAS:

> Reports prepared by an agency charged with investigating abuse, neglect,
> or injury occurring at a facility rendering care or treatment, or by or for the
> facility itself, that describe any or all of the following: (i) Abuse, neglect,
> or injury occurring at the facility; (ii) The steps taken to investigate the
> incidents; (iii) Reports and records, including personnel records, prepared
> or maintained by the facility, in connection with such reports of incidents;
> or (iv) Supporting information that was relied upon in creating a report,
> including all information and records used or reviewed in preparing
> reports of abuse, neglect or injury such as records which describe persons
> who were interviewed, physical and documentary evidence that was
> reviewed, and the related investigative findings.

42 C.F.R. § 51.41(c)(2).

45.    The access provisions of the PADD, PAIMI, and PAIR Acts are interrelated and it is

clear that Congress intended for the provisions to be applied in a consistent manner, and the

PAIR Act expressly incorporates by reference, at 42 U.S.C. § 794e (f), the authority regarding

access to facilities and records set forth in the PADD Act.

## Denial of Access

46.    From September 11, 2008 until March 26, 2009, MPAS and its contractor sent eight

letters to Harrison County officials and/or contractors informing them of MPAS's federal access

rights and requesting the right to exercise these rights at the Juvenile Detention Center.  (*See*

Exhibit 1).

47.    The Defendant responded to each of Plaintiff's requests with an effective denial.  The

Defendant therefore unlawfully denied MPAS the right to exercise its federal authority and

denied children with disabilities detained at the Juvenile Detention Center the right to access

MPAS services.

## Necessity for Injunctive Relief

48.     The Defendant has acted and continues to act in violation of the law as explained above.

Plaintiff D.W. and the class he seeks to represent do not have an adequate remedy at law. As a

result of the policies, practices, acts, and omissions of the Defendant, Plaintiff D.W. and the class

of children he seeks to represent,  have suffered and continue to suffer serious, imminent, and

irreparable physical, mental and emotional injuries.

49.     Plaintiff MPAS does not have an adequate remedy at law and will be irreparably harmed

if the Defendant is permitted to continue prohibiting MPAS and its agents from:

   a) having reasonable unaccompanied access, for monitoring and investigatory purposes, to
      public and private areas of the Juvenile Detention Center;

   b) interviewing youth, staff and other persons as part of its duty to monitor the facility and
      investigate incidents of abuse and neglect;

   c) providing information and training on individual rights and services provided by the P&A
      system;

   d) communicating privately with facility residents;

   e) accessing facility incident reports and investigatory findings;

   f) accessing residents' records.

## EXHAUSTION

50.     The named Plaintiff, D.W., has exhausted all available administrative remedies.

## CAUSES OF ACTION

51.     Plaintiffs incorporate by reference all of the above factual allegations to support the
following claims:

### COUNT I

52.     The conditions of confinement at the Juvenile Detention Center and the Defendant's
deliberate indifference to those conditions, considered both individually and in their totality,
constitute cruel and unusual punishment and a denial of due process in violation of Plaintiffs'
rights under the Eighth and Fourteenth Amendments to the United States Constitution, as
enforced through 42 U.S.C. § 1983.

### Count II

53.     Defendant's refusal to protect children from harm, otherwise keep them physically safe
and secure and free from unconstitutional practices like excessive room confinement, excessive
use of force, arbitrary and punitive disciplinary practices and excessive use of restraints violates
Plaintiffs' constitutional rights under the Eighth Amendment and the Fourteenth Amendment to
the United States Constitution, as enforced through 42 U.S.C. § 1983.

### Count III

54.     Defendant's deliberate indifference to the children's serious mental health needs violates
Plaintiffs' constitutional rights under the Eighth and Fourteenth Amendments to the United
States Constitution, as enforced through 42 U.S.C. § 1983.

### Count IV

55.     The policies, procedures, regulations, practices and customs of the Defendant violate and
continue to violate the rights of the Plaintiff MPAS to full, complete, timely and meaningful

access to the Juvenile Detention Center, staff, residents and their records, in violation of the PAIMI, PADD and PAIR Acts, Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§10801 et seq.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§15001, et. seq.; Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C., §§794e, et. seq.; and 42 U.S.C. §1983.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Honorable Court grant the following relief:

   a.   Declare that the acts and omissions of the Defendant violate the Constitution and federal law;

   b.   Enter a preliminary and permanent injunction requiring the Defendant, its agents, employees and all persons acting in concert with them to cease their unconstitutional and unlawful practices;

   c.   Grant injunctive relief enjoining the Defendant and its   agents and employees from denying MPAS and its contracted agent immediate, full, complete, meaningful and unaccompanied access to the staff, residents, records and facilities at the Harrison County Juvenile Detention Center to conduct monitoring activities and abuse and neglect  investigations without advance notice and at any reasonable time, including business and visiting hours,  in violation of the PAIMI, PADD and PAIR Acts;

   d.   Issue a declaratory judgment that the Defendant's polices, regulations, and practices of denying MPAS and its contracted agent immediate, full, complete, meaningful, and unaccompanied access to the staff, residents, records and facilities at the Harrison County Juvenile Detention Center to monitor and to conduct abuse and neglect investigations, without advance notice and at any reasonable time, including during business and visiting hours, violate the PAIMI, PADD and PAIR Acts;

   e.   Award to the Plaintiffs reasonable costs and attorney's fees; and

   f.   Grant the Plaintiffs such other relief as the Court deems just.

Respectfully submitted,


Vanessa Carroll, Miss. Bar No. 102736
Sheila A. Bedi, Miss. Bar. No. 101652
Mississippi Youth Justice Project
A Project of the Southern Poverty Law Center
921 North President Street Suite B
Jackson, Mississippi 39202
601-948-8882 (voice)
601-948-8885 (fax)


Kay Hardage, Miss. Bar No. 3061
Mississippi Protection and Advocacy Systems, Inc.
5305 Executive Place
Jackson, Mississippi 39206
601-981-8207 (voice)
601-981-8313 (fax)

Of Counsel for Mississippi Protection and
Advocacy Systems, Inc.

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been

served by hand delivery on:

Attorney Joe Meadows
Harrison County Board Attorney
Meadows Law Firm
1902 21st Avenue
Gulfport, MS 39501

This 20th day of April, 2009.

Sheila A. Bedi