IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

D.W., by and through his next friend )
Devonsha Fairley; K.V. by and through her )
next friend Sina Matheny; A.R., by )
and through her next friend Laura Reed; )
J.P., by and through his next friend Theresa )
Pope; A.B., by and through her )
next friend Bernadette Brossett; W.R. by )
and through his next friend, Calista )
Blackmon; on behalf of themselves and all )
persons similarly situated; MISSISSIPPI )
PROTECTION AND ADVOCACY )
SYSTEM, INC., )
)
      Plaintiffs, ) Case No. 1:09 cv 267 LG-RHN
)
v. )
)
HARRISON COUNTY, MISSISSIPPI, )
)
      Defendant. )

## AMENDED SETTLEMENT AGREEMENT

On April 20, 2009 Plaintiffs filed suit challenging conditions in the Harrison County Juvenile Detention Center. Plaintiffs and the Defendant, without any admission on behalf of either, agree that it is in the best interests of all parties to resolve this matter amicably without further litigation and cost to the taxpayers of Harrison County, Mississippi. Therefore, the parties by and through their respective counsel, stipulate and agree to the following provisions to resolve this litigation. This settlement agreement is not to be construed as an admission of any liability or violation of law by the Defendant. Harrison County, Mississippi has contracted with Mississippi Security Police, Inc. (hereinafter MSP) and Health Assurance, LLC to provide

1

services to the Harrison County Juvenile Detention Center in accordance with their contracts and within the law, both State and Federal. While this agreement references these current contractors, the agreement and its specific requirements shall apply fully to the Defendant and to any contractors that may provide services to the Harrison County Juvenile Detention Center in the future. The term "Harrison County Juvenile Detention Center" hereinafter refers collectively to Harrison County, its Board of Supervisors, and all independent contractors who provide or who will provide services to the Harrison County Juvenile Detention Center.

## I. OVERCROWDING

1.1.    The Harrison County Juvenile Detention Center shall operate with direct care staff to youth ratio of 1:8 from the hours of 6:00 am until 10:00 pm and 1:10 from the hours of 10:00 pm to 6:00 am. Direct care staff shall be stationed on the living units, engaged in the active supervision of youth.

1.2.    If the Harrison County Juvenile Detention Center exceeds 90% of its full capacity for longer than two (2) days, Harrison County Juvenile Detention Center staff shall immediately notify the Harrison County Youth Court in writing and request an emergency release for youth charged with non-violent offenses who are eligible for less restrictive alternatives to secure detention. However, the parties recognize that the Harrison County Youth Court must make the ultimate decision as to the release of any youth. Full capacity shall be calculated by determining how many youth can be held in the facility when no more than two youth are assigned to two-person cells, and no more than one youth is assigned to a one-person cell. A two-person cell is a cell that contains two built-in permanent bunks. A one-person cell is a cell that contains one built-in, permanent bunk. The capacity calculation shall not include cells that are regularly used

for intake or observation, nor shall it include beds that are placed in common areas, like day rooms.

1.3.  No more than two youth shall share a two-person cell, and no more than one youth shall be placed in a one-person cell.

1.4.  No youth shall be forced sleep on the floor whether on a mattress or not or in common areas, like day rooms. In case of a public safety emergency, youth may temporarily be placed on the bunk beds in the day room, while the Juvenile Detention Center complies with the requirements of ¶ 1.2. Staff shall make every effort to ensure that no youth is forced to sleep in the day room because of over-crowding for longer than 48 hours.

1.5  Every two weeks, the Harrison County Juvenile Detention Center shall provide the Youth Court with a list of 1) any youth who are not scheduled for adjudicatory hearings within (21) twenty-one days of their admission to the detention center and 2) any youth who are not scheduled for a dispositional hearing within (14) fourteen days of their adjudicatory hearings. The Harrison County Juvenile Detention Center shall request that these youth be scheduled for the appropriate hearings as soon as possible.

## II. INTAKE

2.1  All youth admitted to the Harrison County Juvenile Detention Center shall receive a health screening, if possible, within 1 hour of admission, as required by Miss. Code Ann. § 43-21-321.

2.2  All youth shall receive a MAYSI-2 mental health screening immediately upon admission, as required by Miss. Code Ann. § 43-21-321. If the screening indicates that the youth has urgent mental health issues including but not limited to depression, suicidal ideation, withdrawal from

3

drugs or alcohol, or trauma, the youth shall be immediately evaluated by a mental health professional or taken to the local emergency room.

2.3     During intake, youth shall not be automatically placed on 24 hour lock-down.

2.4     Prescription medications will be secured for all youth within 8 hours of admission if possible, but not longer than within 24 hours of admission, including weekends and holidays. The Harrison County Juvenile Detention Center shall purchase all prescription medications provided to detained youth.

### III. STRUCTURED PROGRAMMING

3.1     The Harrison County Juvenile Detention Center's contractor, MSP shall provide or assign a Director of Programming, who will be responsible for establishing a structured program for detained youth.

3.2     The Director of Programming will establish and administer a daily program (including weekends and holidays) of structured educational, rehabilitative and recreational programs for youth. Particular attention shall be paid to the hours of 3-9 pm. The Director of Programming will also coordinate school, mental health services, religious activities, family engagement efforts, recreation and volunteer activities within the Juvenile Detention Center.

3.3.    The Harrison County Juvenile Detention Center's contractor, MSP, shall develop policies, procedures and practices to ensure that youth participate in at least 15 hours of structured programming daily (including weekends and holidays).

### IV. MENTAL HEALTH CARE

4.1     The Harrison County Juvenile Detention Center's contractor, Health Assurance, LLC, shall provide adequate mental health services to all detained youth pursuant to its contract. This shall include, but is not limited to, the provision of individual and group counseling sessions

upon the request of a youth or the youth's parent/guardian, access to a psychiatrist at the detention center, and the distribution and medical monitoring of psychotropic medications.

4.2    Youth who are prescribed psychotropic medications shall be evaluated by a psychiatrist every (30) thirty days.

4.3.   Individual mental health treatment plans shall be developed for youth who are under the care of a mental health provider. Treatment plans shall emphasize continuity of care and shall ensure that whenever possible, youth are transported to appointments with their regular mental health provider, whether the appointments are standing or made after the youth's initial detention.

## V. MEDICAL CARE

5.1    The Harrison County Juvenile Detention Center's contractor, Health Assurance, LLC, shall provide youth with adequate medical care, including prompt screenings, a full physical exam as soon as possible after admission, (ideally within 72 hours but in no circumstances longer than 7days), access to medical professionals upon request, prescription medications when needed, and prompt transportation to a local hospital in the case of a medical emergency.

5.2    The Harrison County Juvenile Detention Center's contractor, Health Assurance, LLC, shall ensure that a medical doctor and/or nurse practitioner are available to examine youth at the facility to identify and treat medical needs.

5.3    The Harrison County Juvenile Detention Center's contractor, Health Assurance, LLC, shall develop a sick call policy and practice which ensures that youth who request non-emergency medical attention are examined by a medical professional within 24-hours, excepting weekends and holidays. All youth who request non-emergency medical care on holidays and weekends shall be examined by a medical professional within 72 hours.

5.4     Prescription medications shall only be distributed by staff who have received training from a medical professional.

5.5.    Medical and mental health services shall be provided in a manner that ensures the confidentiality of youth's health information.

## VI. CELL CONFINEMENT

6.1.    Youth shall be engaged in structured, rehabilitative and educational programming outside of their cells during the hours of 7:00 am to 10:00 pm each day, including weekends and holidays. During shift change, youth may be placed in their cells for no longer than 30 minutes.

6.2     Youth who pose an immediate, serious threat of bodily injury to others may be confined in their cells for up to 12 hours at a time without administrative approval. Cell confinement for longer than 12 hours must be approved by the Detention Center Director. Youth who are placed on cell confinement for this reason shall be released from their cells daily to maintain appropriate personal hygiene and to engage in one hour of large muscle exercise. Staff must perform visual checks on youth who are subject to cell confinement every 15 minutes.

## VII. DISCIPLINARY PRACTICES AND PROCEDURES

7.1.    The Harrison County Juvenile Detention Center's contractor, MSP, shall develop a discipline policy and practice that incorporates positive behavior interventions and supports. This policy shall include guidelines for imposing graduated sanctions for rule violations, and positive incentives for good behavior.

7.2     Youth who violate major rules may be subject to room or cell confinement for up to 48 hours. No youth shall be confined to a room for longer than 24 hours without written notification of the alleged rule violation and a disciplinary hearing before a staff member who was not involved in the alleged incident. Under no circumstances shall youth be subject to

involuntary cell confinement for longer than 48 hours. Youth who are placed on cell confinement shall be released from their cells daily to maintain appropriate personal hygiene and to engage in one hour of large muscle exercise. Staff must perform visual checks on youth who are subject to cell confinement every 15 minutes.

## VIII. USE OF RESTRAINTS

8.1. By April 1, 2010 the Harrison County Juvenile Detention Center staff shall cease the practice of regularly carrying chemical restraints while on the living units. The Harrison County Juvenile Detention Center shall establish policies and procedures to limit the use of chemical restraints.

8.2 Mechanical and/or chemical restraints shall not be used to punish youth or for the convenience of staff.

8.3 Under no circumstances shall restraints be used to secure youth to a fixed object.

8.4 Under no circumstances shall youth be subjected to "hogtying," which is the practice of placing a youth face down on a bed, floor or other surface, and securing the youth's hands to his feet.

8.5 The Harrison County Juvenile Detention Center shall develop a policy and procedure to ensure that restraints are only used when a resident presents a threat of serious bodily injury to himself or others.

8.6 No youth shall be restrained for longer than 15 minutes, unless restraints are approved by a mental health professional. Under no circumstances should a youth be restrained for longer than 25 minutes.

8.7     Nothing in this provision shall prohibit restraints from being placed on youth during transportation, if staff have reason to believe that a youth presents a flight risk or will engage in violent behavior during transport.

8.8     Restraints will not be used on youth who are deemed to be suicidal unless a licensed mental health professional deems humane restraints necessary to prevent a youth from harming himself or herself. If a youth must be restrained for longer than 25 minutes in order to prevent self-harm, that youth shall, as quickly as possible, be evaluated by a mental health professional or transported to a mental health facility or to the emergency room of a local hospital.

8.9     When a child is placed in mechanical restraints, staff must provide one-on-one supervision for the duration of the restraint.

8.10    Harrison County Juvenile Detention Center's contractor, MSP, shall notify a medical professional whenever a resident is restrained for reasons other than transportation. A medical professional shall examine a youth as soon as possible after restraints are removed.

## IX. USE OF FORCE

9.1     Physical force shall not be used to punish youth. MSP's Staff shall not "slam," "take down" or "secure youth to the floor" as a form of control or a control technique. MSP's staff shall only use physical force to stop youth from causing serious physical injury to self or others or to prevent an escape. If physical force is necessary, MSP's staff must use the minimum amount required to safely contain the youth. No youth shall be subject to physical force until staff have first attempted verbal de-escalation techniques.

9.2     By December 31, 2009 staff will phase out the use of pressure point holds, and other pain aversion behavior management techniques.

9.3     Harrison County Juvenile Detention Center's contractor, MSP, shall notify a medical professional whenever physical force is used against a resident. A medical professional shall examine a youth as soon as possible after the use of force.

## X. SUICIDE PREVENTION

10.1    Harrison County Juvenile Detention Center's contractors, MSP and Health Assurance, LLC shall develop a multi-tiered suicide prevention policy that has at least three stages of suicide watch.

10.2    Any resident placed on the highest level of suicide watch shall be evaluated by a mental health professional ideally, within 12 hours but not longer than 24 hours of his or her placement on suicide watch. If a resident on the highest level of suicide watch is not evaluated by a mental health professional within 24 hours, the resident shall be immediately transported to a local mental health facility or emergency room for evaluation and/or treatment.

10.3    Youth on suicide watch shall participate in recreation, school, and other structured activities. Youth shall not be required to wear a "suicide gown" unless locked in a cell. Staff shall closely supervise youth on suicide watch by logging activities every 10 minutes.

10.4    When a resident is placed on any level of suicide watch, within 24-hours a report shall be made to the youth court, as well as to the resident's guardian and his or her attorney.

## XI.    HYGIENE AND SANITATION

11.1.   Youth shall be provided with the means to maintain appropriate hygiene, including soap and shampoo for showers, which will occur at least once daily; soap for washing hands after each time the youth use the toilet; and tooth paste and a tooth brush for tooth brushing, which will occur at least twice daily.

11.2.   Youth shall be provided with sleeping mats and blankets that are clean and odorless.

11.3.  Under no circumstances shall youth be deprived of mats and blankets.

11.4.  Youth shall be provided with a clean, sanitary environment.

11.5.  Harrison County shall develop policies and practices to ensure that the Juvenile Detention Center complies with relevant law regarding fire safety, hurricane preparedness, sanitation practices, food safety and the elimination and management of environmental toxins.

## XII.  MISCELLANEOUS PROVISIONS

12.1.  Male and female youth shall be provided with equal access to educational services, medical care, and indoor and outdoor recreation.

12.2.  Contractor's Staff are prohibited from having inappropriate contact with youth. Inappropriate contact includes, but is not limited to conversations of a sexual nature, verbal sexual harassment, dissemination of sexually explicit materials inside the detention center, and sexual acts or touching.

12.3.  Harrison County Juvenile Detention Center will collaborate with the Plaintiffs to develop a comprehensive policy that will address cross-gender supervision, sexual harassment and gender discrimination.

12.4.   All youth shall have the opportunity to engage in at least one hour of large muscle exercise a day.

12.5.  Harrison County will incorporate the terms of this settlement into any relevant contracts and/or requests for proposals.  The County will further ensure that all contractors revise and update standard operating procedures in compliance with this Agreement.

12.6.  Youth shall have access to an adequate grievance system that is accessible to all youth regardless of literacy levels, and that provides youth with the opportunity to appeal facility-level determinations.

12.7. All staff working at the Harrison County Juvenile Detention Center shall receive training on their obligation under state law to report child abuse and neglect.

## XIII. STAFF TRAINING

13.1. Harrison County shall collaborate with the Plaintiffs to design and implement a comprehensive training for detention center staff. Training shall include, but is not limited to, the mandatory reporting requirements for direct care workers, the requirements of the Prison Rape Elimination Act, verbal de-escalation techniques, adolescent brain development and developmental issues, effective communication with adolescents, effective documentation appropriate use of force and restraint and best practices for detention center administration.

## XIV.   ENFORCEMENT, MONITORING AND DISMISSAL

14.1   The Harrison County Juvenile Detention Center agrees that, for the purpose of monitoring compliance with this agreement, the Plaintiffs will have full access to the juvenile detention center, its residents and relevant records, including but not limited to institutional files, medical files, mental health files, educational files, videotapes, and all informational and other reports by staff, grievances, incident reports, and other relevant documents and files maintained by the Harrison County Juvenile Detention Center. Plaintiffs agree to indemnify the County for any liability it incurs as a result of Plaintiffs' actions or inactions related to the monitoring of this agreement. Plaintiffs further agree to comply with all state and federal confidentiality requirements regarding youth court, educational and/or medical records. The Parties will jointly develop a notice that will be provided to each youth detained at the Harrison County Juvenile Detention Center and his or guardian. The Notice will provide the following information 1) a statement of detained youths' rights pursuant to this agreement; 2) a description of Plaintiffs' counsel's ongoing monitoring activities—including a statement that Plaintiffs' counsel may

conduct confidential interviews with youth and examine confidential records ; 3) information about how youth may decline to participate in the monitoring and enforcement of this agreement.

14.2 The Harrison County Juvenile Detention Center will collaborate with the Plaintiffs to develop a report format to track compliance with the terms of this settlement. For a period of three years from the date of this agreement, the Plaintiffs will submit quarterly reports to the Harrison County Board of Supervisors regarding the juvenile detention center's compliance with the terms of this agreement. At least three times a year, the Plaintiffs may provide in-person briefings to the Harrison County Board of Supervisors on the status of this settlement.

14.3 All of the Plaintiffs' attorneys fees, expenses and costs incurred in connection with this agreement will be borne by the Plaintiffs and no claim for reimbursement from the County will be made unless counsel for the Plaintiffs are forced to go to court to enforce this agreement during a period of one year following the effective date of the agreement and the Plaintiffs prevail before the court. It will then be up to the court to decide whether any attorneys fees, costs or expenses should be paid by the Defendant, with each party having whatever rights of appeal exist under the law.

14. 4. For the purpose of settlement only, the Defendant does not object to class certification. The settlement class is defined as "all children who are currently or will in the future be confined at the Harrison County Juvenile Detention Center."

14.5. This Settlement Agreement is not a consent decree, and is not enforceable in federal court. In the event of non-compliance with any of the terms in this Settlement Agreement, the plaintiffs may only enforce the Settlement Agreement in state court, pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626(c)(2), which provides: "(A) Nothing in this section shall preclude parties from entering into a private settlement agreement that does not comply

with the limitations on relief set forth in subsection (a), if the terms of that agreement are not subject to court enforcement other than the reinstatement of the civil proceeding that the agreement settled. (B) Nothing in this section shall preclude any party claiming that a private settlement agreement has been breached from seeking in State court any remedy available under State law."

14.6   The Plaintiffs are not precluded from bringing a new action in federal court in the event of non-compliance with the terms of this Settlement Agreement, however this Settlement Agreement or the terms hereof cannot be used against or as an admission of any parties hereto.

14.7   This Settlement Agreement shall not preclude any child who is currently detained in the Harrison County Juvenile Detention Center or who will be detained in the future from pursuing a claim related to his or her detention in either state or federal court. Nothing in this Settlement Agreement shall prohibit any child or parent\guardian from hiring their own attorney to represent them regarding conditions of confinement or any other matter.

14.8   If the Court approves this Settlement Agreement, the current case will be dismissed without prejudice from federal court.

14.9.  Harrison County's contractors, MSP and Health Assurance, LLC, shall sign this Agreement acknowledging their understanding and obligations pursuant to the contracts each currently have with Harrison County, Mississippi and this agreement.

This the 30 day of September, 2009.

_____
Sheila A. Bedi
Vanessa Carroll
Counsel for Plaintiffs

_____
Tim C. Holleman
Counsel for Defendant

13